# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**TONY D.[1]**,

        Plaintiff,

      v.

**ANDREW M. SAUL,** Commissioner of
Social Security,

        Defendant.

Case No. 6:18-cv-1581-SI

**OPINION AND ORDER**

Katherine L. Eitenmiller and Mark A. Manning, HARDER WELLS BARON & MANNING, PC,,
474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney,
UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204;
Alexis L. Toma, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social
Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104.
Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Tony D. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying his application for supplemental

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case. When applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

social security income ("SSI") and disability insurance benefits ("DIB"). Because the Commissioner's findings were not supported by substantial evidence, the decision is **REVERSED** and this case **REMANDED** for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A.  Plaintiff's Application

Plaintiff was born October 8, 1975 and was thirty-six years old on the alleged disability

onset date of May 11, 2012. He filed for SSI and DIB in February 2015. AR 284. His

applications were denied both initially and upon reconsideration. AR 132. Plaintiff then

requested a hearing before an Administrative Law Judge ("ALJ"), which occurred in February

2018. AR 31. In March 2018, the ALJ issued a written decision denying Plaintiff's SSI and DIB

applications. AR 10. Plaintiff requested review of the ALJ's decision. AR 281. The Appeals

Council denied the request, and the ALJ's decision became the final decision of the

Commissioner. AR 1. Plaintiff now seeks judicial review of the Commissioner's final decision.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since the alleged disability onset date. AR 15. At step two, the ALJ found that Plaintiff suffered from the following severe medically determinable impairments: depression, panic disorder, marijuana abuse, carpal tunnel syndrome, and degenerative disc disease of the spine. AR 16. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Between step three and step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR 416.967(c) and 404.1567(c) with the additional limitations that:

> [Plaintiff] can frequently stoop, crouch, kneel, or crawl; can never climb ladders, ropes, or scaffolds; can frequently handle with his left (nondominant) upper extremity; cannot tolerate exposure to extremes of heat or cold; can have frequent contact with the public; and can have frequent contact with coworkers and supervisors.

*Id.* At step four, the ALJ found that Plaintiff could perform his past relevant work as a fiberglass finisher for boat parts. AR 23. In the alternative, at step five, the ALJ found that jobs existed in

significant numbers in the national economy that Plaintiff could perform, including day worker and floor waxer. AR 24.

## DISCUSSION

Plaintiff contends that the ALJ's decision finding Plaintiff not disabled was not supported by substantial evidence. Plaintiff argues that the ALJ erred by: (A) improperly weighing the medical opinion testimony of Dr. Gomes, Drs. Lewy and Kessler, and Ms. Ward; (B) improperly rejecting Plaintiff's subjective symptom testimony; and (C) improperly rejecting lay witness testimony.

## A. Medical Opinion Testimony

### 1. Acceptable and Non-Acceptable Medical Sources

#### a. Hierarchy of "Acceptable" Medical Sources

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a

treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

The ALJ generally also must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive

basis" for the ALJ's conclusion. *Garrison*, 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

### b. "Non-Acceptable" Medical Sources

Social Security Rule ("SSR") 06-03p[2] in effect at the time Plaintiff filed [his/her] claim defined "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists. SSR 06-03p, *available at* 2006 WL at 2329939 (Aug. 9, 2006). Health care providers who are not "acceptable medical sources," such as "nurse practitioners, physician's assistants, chiropractors, audiologists, and therapists," are still considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. § 404.1513(d). An

---

[2] For claims filed on or after March 27, 2017, the Commissioner has rescinded SSR-06-03p, broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants for impairments within their licensed scope of practice, and clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263. Even before the rescission, the Ninth Circuit noted that "the [social security] regulations provide an outdated view that consider a nurse practitioner an 'other source'" *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017).

"other" medical source may not, however, provide medical opinions or be given "controlling" weight as a treating medical source. *See* SSR 06-03p. Because Ms. Ward is a licensed counselor, she is considered an "other" medical source.

An ALJ may not reject the competent testimony of "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.* at 1114. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of the claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no

reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

In considering how much weight to give "other" medical source opinion evidence, the ALJ should consider: (1) "how long the source has known and how frequently the source has seen the individual"; (2) "how consistent the opinion is with other evidence"; (3) "the degree to which the source presents relevant evidence to support an opinion"; (4) "how well the source explains the opinion"; (5) "whether the source has a specialty or are of expertise related to the individual's impairment(s)"; and (6) "any other factors that tend to support or refute the opinion." SSR 06-03p. The fact that a source is an "acceptable medical source" sometimes entitles that source's opinions to more weight than the opinions from other medical sources. *Id.* Nonetheless, in certain instances, after applying the factors for weighing opinion evidence, and ALJ may properly find that an opinion from a medical source who is not an "acceptable medical source" outweighs the opinion of the "acceptable medical source":

> For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

*Id.*[3] This caveat is particularly poignant when a "non-acceptable" medical source is the claimant's treating provider. As discussed above, the ALJ should give more weight to opinions from treating providers because they have treated the claimant over a period of time and "bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone" or from one-time evaluations performed by consulting physicians. 20 C.F.R. §§ 404.1527(c), 416.927(c)(2).

---

[3] Giving more weight to the opinion of a non-acceptable medical source over a treating medical source does not violate the treating source rules under 20 C.F.R. § 404.1527(d)(2).

## 2. Medical Source Opinions

### a. Dr. Gomes

Dr. Gomes saw Plaintiff in September 2015. Based on an hourlong consultation and review of Plaintiff's medical records, Dr. Gomes opined that Plaintiff could perform simple repetitive tasks, accept supervisor instructions, work on a consistent basis without special instruction, maintain regular attendance, and adapt to a normal workweek. AR 805-06. Dr. Gomes noted that Plaintiff worked as a waiter after the alleged disability onset date and only left that job when his employer shut down. AR 801. Dr. Gomes did state that Plaintiff "would have difficulty" with detailed work, public and co-worker interaction, and dealing with usual workplace stress. AR 805-06. Dr. Gomes believed that the last item would pose a problem because Plaintiff "currently . . . lack[ed] sufficient positive protective factors." *Id.*

Dr. Gomes is an examining physician, which is a type of "acceptable" medical source. Thus, the ALJ must give "specific, legitimate reasons" for discounting Dr. Gomes's opinion, and those reasons must be "supported by substantial record evidence." *Roberts*, 66 F.3d 184.

The ALJ gave only partial weight to Dr. Gomes' opinion that Plaintiff would have difficulty with detailed and complex tasks because it was inconsistent with Plaintiff's "remote and minimal psychiatric treatment history" and his "mostly benign mental status examination results." AR 22. The ALJ incorrectly characterized Plaintiff's treatment history as "remote and minimal." Plaintiff routinely saw Ms. Ward, a counselor, on a monthly basis between June 2012 to July 2015. AR 879. He only stopped going when Ms. Ward left the clinic. *Id.* He resumed monthly visits with a new counselor in October 2015. AR 833. Plaintiff also consistently took prescription medications and engaged in regular medication management even during the three months when he was between therapists. AR 853. The most recent records from before the administrative hearing, from late 2017, show that Plaintiff has continued to seek therapy and

treatment with medication. AR 1108. There is no "unexplained or inadequately explained failure to seek treatment" in this case. *Molina*, 674 F.3d at 1113 (quotation marks omitted). The ALJ's finding that Plaintiff's treatment history was "remote and minimal" is not supported by substantial evidence. Thus, the ALJ improperly relied on it to discount Dr. Gomes's medical opinion.

The ALJ also found Dr. Gomes's opinion inconsistent with Plaintiff's "mostly benign mental status examination results." AR 22. That is a specific and legitimate reason to discount a medical source opinion when the opinion is incongruent to the physician's medical records. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ properly relied on these inconsistencies as a reason to discount the portion of Dr. Gomes's opinion limiting Plaintiff's ability to perform complex tasks. The ALJ reasonably found that Plaintiff's normal mental status exam results in the areas of memory, concentration, and abstract thinking were inconsistent with Dr. Gomes's opinion that Plaintiff would have difficulty performing detailed work. This conflict is "substantial evidence" to support the ALJ's rejection of Dr. Gomes's opinion. *See Garrison*, 759 F.3d at 1012 (noting that an ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."). Although Plaintiff's "remote and minimal" treatment was an improper reason to discount Dr. Gomes's testimony, the internal inconsistencies the ALJ identified were a proper one. Thus, the ALJ's initial error was harmless and the ALJ properly rejected this portion of Dr. Gomes's opinions.

Plaintiff also argues that the ALJ neither rejected nor accounted for in the RFC Dr. Gomes's opinion that Plaintiff would have difficulty dealing with the usual stress encountered in a workplace and would initially have difficulty completing a normal workday or workweek

within customary tolerances. Indeed, the ALJ did not mention this portion of Dr. Gomes's opinion in his analysis at all. *See* AR 22 (analyzing Dr. Gomes's opinion that Plaintiff could not perform complex tasks but omitting discussion of additional limitations). Defendant argues that Dr. Gomes's stress and routine limitations are "vague" and "non-specific," and that the ALJ accounted for them by limiting Plaintiff's social contact and identifying unskilled jobs at step five. The first argument is unpersuasive because the ALJ did not cite vagueness or non-specificity as a reason to reject Dr. Gomes's opinion. *See Bray*, 554 F.3d at 1226 (explaining that the Court may not affirm an ALJ's decision on a ground upon which the ALJ did not rely).

The latter argument is unpersuasive as well. Plaintiff cites cases from this district in which ALJs included an additional limitation to "low stress" work, even though their RFC also restricted plaintiffs to unskilled jobs with limited social contact. *See, e.g.*, *Williams v. Colvin*, 2016 WL 781907, at *1 (D. Or. Feb. 29, 2016) ("The ALJ found Plaintiff had the residual functional capacity to perform . . . simple, routine, repetitive tasks with one-to-two step instructions; occasional, superficial contact with coworkers on trivial matters; no public contact; occasional supervisor contact; and perform only low stress work that requires few decisions or changes."); *Galindo v. Comm'r of the Soc. Sec. Admin.*, 2015 WL 7069664, at *5 (D. Or. Nov. 13, 2015) ("[T]he ALJ credited Dr. Slatick's opinion only to limit Galindo to 'simple, repetitive, and routine tasks consistent with unskilled work, in addition to the limitation to low stress work . . .""). This additional limitation implies that not all unskilled jobs with limited social contact are low stress, and that an RFC that incorporates the former restrictions does not necessarily cover the latter. Thus, the ALJ committed error by formulating a RFC that exceeded "the concrete limitations in the medical opinions." *Rogers v. Comm'r of Soc. Sec. Admin.*, 490 Fed. Appx. 15, 17 (9th Cir. 2012). This error is harmful because the ALJ did not consider the

additional limitations in determining whether Plaintiff could perform his past relevant work at step four or other jobs in the national economy at step five.

### b. Drs. Lewy and Kessler

Drs. Lewy and Kessler are state agency physicians who reviewed Plaintiff's medical records. Dr. Lewy reviewed Plaintiff's records initially, and Dr. Kessler reviewed them upon reconsideration. AR 148, 179. According to the ALJ, they both stated that Plaintiff had "numerous functional limitations." AR 22. The ALJ did not, however, state with any detail what these functional limitations were. The ALJ gave the opinions of Drs. Lewy and Kessler "partial weight" because they were partially inconsistent with Plaintiff's "history of near-normal mental status examination results, lack of emergency psychiatric treatment during the relevant period, and limited, sporadic counseling history." *Id.* Because Drs. Lewy and Kessler are both reviewing, non-examining physicians, the Court inquires whether these are "germane reasons" to reject their medical opinions. *See Molina*, 674 F.3d at 1111.

The ALJ improperly rejected the opinions of Drs. Lewy and Kessler based on Plaintiff's based on his counseling history and lack of emergency psychiatric treatment. As discussed above, Plaintiff's counseling history is hardly "limited" and "sporadic." Further, the ALJ cited no authority for the proposition that a claimant must have sought emergency psychiatric treatment in order to be disabled under the circumstances present here. The ALJ's reasoning here is close to practices against which the Ninth Circuit has warned. *See Fair*, 885 F.2d at 603 (warning that "the Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits.").

The ALJ also cited inconsistencies with Plaintiff's "near-normal mental status examination results" as a reason to reject the opinions of Drs. Lewy and Kessler. AR 22. This may be a legitimate reason, but the ALJ did not specify which "functional limitations" he was

rejecting due to incompatibilities with which "mental status examination results." The ALJ

partially rejected these medical opinions, but it is unclear from his decision which parts he

rejected and which parts he credited. This error was harmful—fully crediting the opinions of

Drs. Lewy and Kessler may have changed the ultimate disability determination. *See Stout*, 454

F.3d at 1055 (explaining the difference between harmless and harmful errors) (quotation marks

omitted). There are further disparities between the medical opinions and the ALJ's RFC. For

example, Dr. Lewy opined that Plaintiff could manage only "occasional contacts with the

public." AR 143. The ALJ's RFC permits Plaintiff to have "frequent contact with the public."

AR 19. Regardless of whether the specific jobs the ALJ identified involve public contact, the

RFC is not supported by substantial evidence.

### c. Ms. Ward

Ms. Ward treated Plaintiff monthly from June 2012 to July 2015. In June 2015, Ms. Ward

wrote that Plaintiff reportedly suffered from "depressed mood most days," "extreme fear [and]

anxiety leading up to and [for] the duration of work shifts," and the inability to "concentrate to

complete tasks due to anxiety." AR 699. She also noted that Plaintiff's mental health status

"fluctuate[d] during the day making it hard to go to or finish a work day [without] extreme

anxiety and dread." *Id.* She assessed a mix of moderate (would preclude sustained performance

of jobs in which the function is a requirement) and marked (would preclude performance of jobs

in which the function is more than very incidental) in the functional areas of understanding and

memory, sustained concentration and persistence, social interaction, and adaptation. *Id.*
at 705-06.

Ms. Ward is a mental health counselor, which is a type of "non-acceptable" medical

source. Thus, the ALJ needed to provide "germane reasons" for rejecting her medical opinion.

*See Molina*, 674 F.3d at 1111. She also saw Plaintiff regularly for three years, which should inform the ALJ's assessment of her opinion. *See* SSR 06-03p.

The ALJ granted Ms. Ward's opinion "little weight" because it did "not reflect objective mental status examination results," but instead was "explicitly formed on the basis of [Plaintiff's] self-reports." AR 22. This was legal error—that Ms. Ward based her assessment on her "therapy activities," *id.*, is not a "germane reason" to reject her medical opinion, *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017). Reliance on self-reports is not an appropriate reason to reject a psychiatric evaluation because diagnosis of a psychiatric condition "will always depend in part on the patient's self-report, as well as the clinician's observations of the patient." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Defendant argues that Plaintiff's case is distinguishable because Ms. Ward premised her opinion "to a large extent" on Plaintiff's subjective symptom reports. *Id.* (quoting *Morgan*, 169 F.3d at 602). But the Ninth Circuit has held that it is improper to reject a provider's opinion based on its partial reliance on the patient's self-reports when the record reflects that the provider conducted a clinical interview and mental status evaluation, which are "objective measures [that] cannot be discounted as a 'self-report.'" *Id.* The record reflects that Ms. Smith relied on her own clinical observations in addition to Plaintiff's self-reports. *See* AR 513 (observing that "[c]lient was engaged in session"); AR 519 (describing how client "identified and processed emotions"); AR 541 (noting that "[c]lient appeared to be stuck in old negative thinking patterns"). The ALJ's error was harmful because the Court cannot "confidently conclude that no reasonable ALJ . . . could have reached a different conclusion" had they credited Ms. Ward's medical opinion. *Stout*, 454 F.3d at 1056.[4]

---

[4] The Court also notes that the ALJ erred by not assessing Ms. Ward's opinion as that of a treating medical source. Ms. Ward counseled Plaintiff monthly for three years, but the ALJ's analysis did not account for her "unique perspective." 20 C.F.R. §§ 404.1527(c), 416.927(c)(2).

## B. Plaintiff's Subjective Symptom Testimony

### 1. The Two-Step Process and Summary of Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[5] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

---

[5] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883. The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

The Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with SSR 16-3p. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source

statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ accurately summarized Plaintiff's testimony about his mental and physical symptoms. The ALJ recounted Plaintiff's testimony that he suffers from "chronic pain in his back, legs, neck, shoulders, arms, and hand." AR 19. Plaintiff also stated that his anxiety and depression make it difficult for him to do anything and cause him to remain in bed for days at a time. *Id.* At the administrative hearing, Plaintiff testified that dealing with the public amplified his anxiety. AR 40. Plaintiff feels like that he has done everything that he possibly can, but is "just not winning this battle." AR 60.

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, satisfying step one of the framework. AR 19. The ALJ, however, determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record." *Id.* Thus, the question is whether the ALJ provided "clear and convincing" reasons for rejecting Plaintiff's symptom testimony.

### 2. Testimony about Mental Impairments

The ALJ provided three reasons for rejecting Plaintiff's testimony about his mental impairments: (1) conservative treatment history; (2) inconsistency with activities of daily living (ADLs); and (3) inconsistency with medical records. As discussed above, the ALJ's finding that Plaintiff's treatment history was "remote and minimal" was not supported by substantial evidence. Thus, that finding is not a proper reason to discount Plaintiff's subjective symptom testimony. Inconsistency with ADLs is also a partially improper reason to discount Plaintiff's testimony here. The Ninth Circuit has explained that ADLs are relevant only to the extent that they translate to "the more grueling environment of the workplace," *Fair v. Bowen*, 885

F.2d 597, 603 (9th Cir. 1989), or are inconsistent with a plaintiff's claimed limitations, *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Many of the activities that Plaintiff reported— having friends, shopping with others, and caring for himself—do not "meet the threshold for transferrable work skills," and are thus not probative of Plaintiff's disability status. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Similarly, Plaintiff's reported ability to work a heavily modified schedule at Subway during the disability period is not relevant because he received special accommodations. His supervisor permitted him to leave early, take frequent breaks, and smoke marijuana on the job. AR 19. Plaintiff also testified that he had to leave this job because it was too mentally and physically demanding, even with the extra accommodations. AR 38.

The inconsistencies between Plaintiff's testimony and the objective medical records are not "clear and convincing" reasons to reject the testimony. The ALJ noted only that Plaintiff's treatment records "are not consistent with completely disabling psychological symptoms." AR 21. Plaintiff need not, however, demonstrate that he is "completely disabled" in order to qualify for disability benefits. *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity."). The ALJ noted one inconsistency that is relevant to Plaintiff's disability status. Plaintiff worked as a waiter for 11 months through 2014—well after the alleged disability onset date of May 2012. AR 20. He lost that job because the restaurant closed, not because of his impairments. And unlike at his job at Subway, there is no indication that Plaintiff received any special accommodations at this job. Thus, the ALJ properly discounted Plaintiff's subjective symptom testimony about his mental impairments. *See Batson*, 359 F.3d at 1197.

### 3. Testimony about Physical Impairments

Plaintiff testified that he suffers from chronic back pain, chronic neck pain, and chronic bilateral carpal tunnel syndrome pain. The ALJ found that Plaintiff's treatment history and the

medical record only "partially supported" Plaintiff's statements about his physical symptoms. AR 20-21. These are clear and convincing reasons for discounting Plaintiff's subjective symptom testimony about his physical impairments. The ALJ, however, erred by not including in the RFC limitations accounting for the physical symptoms that he did find credible. "Unexplained, or inadequately explained, failure to seek treatment" is sufficient evidence to discount a claimant's testimony about the severity of their symptoms. *Fair*, 885 F.2d at 603. Effectiveness of treatment is also a relevant factor in evaluating testimony about the severity of symptoms. *See Orteza*, 50 F.3d at 750 (explaining that ALJ may consider effectiveness of treatment in assessing claimant's credibility"). Plaintiff testified that he did not have surgery for his back pain because he was afraid, even though he was a good candidate for surgery. AR 46-47, 990. Plaintiff did not, however, pursue any alternative treatments. The ALJ noted that there was "no record of physical therapy or chiropractic treatment, even though these are low-risk, conservative options, and even though his physician gave him referrals for these treatments." AR 20. Plaintiff offers no explanation for why he did not pursue alternative treatment. The ALJ properly reasoned that this suggested that Plaintiff's back pain was not as severe as he claimed.

Plaintiff further objects to the ALJ's characterization of the medical record and argues that the record is "entirely consistent with Plaintiff's reported symptoms." The medical record is equivocal. Although MRIs and physical examinations from early 2015 revealed impairments, physical examinations from later 2015 showed only "minimal thoracic scoliosis." *Id.* Even if the objective findings might be consistent with Plaintiff's symptom testimony, the Court must defer to the ALJ when evidence is "susceptible to more than one rational interpretation." *Molina*, 674 F.3d at 1111. Therefore, the ALJ properly cited the medical record as a reason to partially discount Plaintiff's testimony about his back pain.

The ALJ ultimately found that the medical record showed "mild abnormalities that support the conclusion that [Plaintiff] has significant cervical spine abnormalities, which warrant accommodation with limited lifting and carrying, and limited postural changes that involve extension of the neck." AR 21. The ALJ did not mention any lifting or carrying limitations in the RFC. AR 19. The ALJ erred by omitting lifting and carrying limitations, because he had previously found these restrictions to be supported by the medical record.

The ALJ also properly discounted Plaintiff's testimony about his wrist pain, because the ALJ observed that Plaintiff's hand pain "improved drastically" after he had surgery. AR 21. The ALJ did, however, note that Plaintiff's "left carpal tunnel syndrome is found to result in limited ability to handle objects." *Id.* This is inconsistent with the RFC, which states that Plaintiff "can frequently handle with his left (nondominant) upper extremity." AR 19. It was error for the ALJ not to include a limitation for Plaintiff's left hand, because the ALJ himself found that Plaintiff had a "limited ability to handle objects" with his left hand. That error is harmful because the ALJ did not consider the additional limitations in determining whether Plaintiff could perform his past relevant work at step four or other jobs in the national economy at step five.

## C. Lay Witness Statements

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony about a claimant's symptoms or how an impairment affects ability to work is competent evidence. *Id.* An ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

Ms. Walters, Plaintiff's mother, wrote that Plaintiff was "scared of people," spent up to three days in bed at a time, and only left his bed for appointments. AR 380. She reported that he could go on quick shopping trips, but that anxiety and pain issues cut these trips short. AR 382. Mr. Ward, Plaintiff's friend, recalled that he had invited Plaintiff to go hiking, skiing and swimming; and that Plaintiff tried to join but ultimately was unable to because of his chronic pain. AR 427. He also observed that Plaintiff appeared "humped over" while he was walking. *Id.* The ALJ gave only "partial weight" to both testimonies because Mr. Ward and Ms. Walters are not medical professionals. But the mere fact that a source is a lay witness is not a germane reason to reject their testimony. If that were the case, ALJs could freely reject lay witness opinions for no reason at all. Notably, the ALJ did not specify any inconsistencies between the lay testimony and the medical source opinions. He said only that the medical source opinions were "more objective and reflect . . . professional expertise." AR 23. That alone is not a germane reason to reject the lay witness testimony.

**D.  Remand for Further Proceedings**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ committed reversible error in rejecting medical source evidence (the opinions of Dr. Gomes, Dr. Lewy, Dr. Kessler, and Ms. Ward) and lay testimony (the opinions of Mr. Ward and Ms. Walters). The ALJ also erred by not including in the RFC physical and mental limitations which he found supported by substantial evidence. The Court cannot, however, find that the record as a whole is free from all conflict and ambiguity.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is **REVERSED AND REMANDED** for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 16th day of March, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge